S. D. Callaway v. State.

152. So. 429.
Division A.
Opinion Filed November 10, 1933.
Opinion on Rehearing Filed February 7, 1934.

*Wayne Allen* and *Vincent C. Giblin,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

ELLIS, J.—S. D. Callaway was charged by information lodged in the Criminal Court of Record for Dade County with an offense denounced by Sections 7486 and 7487, Compiled General Laws, 1927, was found guilty as charged, and

sentenced by the court under the provisions of the latter Section.

Section 7485, C. G. L., denounces an offense different from that denounced by Sections 7486 and 7487 and prescribes a different punishment. The offense denounced by Section 7485, C. G. L., is a misdemeanor, while that denounced by Sections 7486 and 7487, C. G. L., is a felony. The information contains two counts. They are identical in language except that the first count charges the offense to have been committed on September 20, 1930, and the amount exacted and accepted as thirty dollars, while the second count charges an offense to have been committed on January 20, 1931, and the sum of money exacted and received to have been forty dollars.

The Sections under which the information was drawn denounce the offense of accepting by officers unauthorized compensation for performance or non-performance of a duty. Section 7486 provides in substance that it shall be unlawful for any officer, State, county or municipal, or any public appointee or any deputy of any such officer or appointee "to exact or accept any reward, compensation or other remuneration other than those provided by law, from any person whatsoever for the performance, non-performance or violation of any law, rule or regulation that may be incumbent upon the said officer or appointee to administer, respect, perform or to have executed."

Section 7487, C. G. L., provides that whoever violates the preceding section without reasonable ground for believing that the reward, compensation or remuneration exacted or accepted was authorized by law, shall be punished by imprisonment in the State prison not exceeding ten years or by fine not exceeding one thousand dollars or both such fine and imprisonment.

The two sections 7486 and 7487 denounce one offense statutory in character and all the essential elements of which should be alleged in the information charging the accused with the commission of the offense. See Johnson v. State *ex rel.* Fox, 99 Fla. 711, 127 So. Rep. 317.

The information in this case charges all the essential elements in the statutory offense denounced by the two sections of the Compiled General Laws.

Section 7485 denounces an offense committed by a sheriff, constable or other person authorized to serve legal process, when he receives from a defendant, or any other person, any money or other valuable thing as a consideration, reward or inducement for "omitting or delaying to arrest a defendant, or to carry him before a magistrate, or for delaying to take a person to prison, or for postponing the sale of property under an execution, or for omitting or delaying to perform any duty pertaining to his office." The punishment prescribed for the offense is imprisonment not exceeding three months or by fine not exceeding three hundred dollars.

There is very little distinction between the two offenses other than that one is made a misdemeanor and the other a felony. The misdemeanor relates to sheriffs, constables or other officers authorized to serve legal process who accept rewards for omitting to perform their duties. The felony relates to *any* officer, State, county, or municipal, or any public appointee, or any deputy of any such officer or appointee, who exacts or accepts a reward for performing or omitting to discharge a duty. That designation would embrace sheriffs, constables or other officers authorized to serve legal process. The gravamen of the misdemeanor consists in receiving from a defendant or any other person money or other valuable thing as a consideration, reward or in-

ducement for omitting or delaying to perform a duty. The gravamen of the felony consists in either exacting or accepting a reward or compensation other than that which is provided by law for the performance or non-performance or violation of a law or rule which is incumbent upon the officer to obey when he has no reasonable ground for believing that the reward or compensation exacted or accepted is authorized by law.

Both offenses are defined in the Compiled General Laws of Florida under the Article entitled "Bribery." The statutes define in each case the common law offense of bribery but the offense is confined to the officer who accepts or exacts the reward and does not include the person offering or paying the reward for the performance of the duty or the omission of it. The sections denouncing the offense as a felony, however, introduce the element of extortion which differentiates it from the offense of bribery and makes it more odious. The offense consists in the oppressive misuse of the exceptional power with which the law invests the incumbent of an office, is the language of Mr. Justice REED in Kirby v. State, 57 N. J. L. 320, 31 Atl. Rep. 213.

In the transaction denounced as a misdemeanor the sheriff or deputy is a complaisant tool in the hands of the person offering the reward, a passive agent in the scheme of the bribe giver, but in the transaction denounced as a felony the officer appears as one exacting a compensation, or reward over that which the law prescribes, from a person toward whom the officer is required by law or rule to take some official action; an extortion practiced by demanding the sum required, or by means of insidious suggestions or veiled threats of the arbitrary exercise of official power, induces another to offer a reward for the non-performance or violation of a law.

To the judgment of conviction Callaway took a writ of error.

The brief for the plaintiff in error does not comply with the rule adopted in November, 1930, and which went into effect in January of the year following, and known as Rule 20, in that the principal or controlling questions involved in the controversy are not stated in the form of questions for decision so that each question is so "phrased that the point of law intended for solution may plainly appear," nor whether the questions of law so stated were affirmed, negatived or qualified by the court below.

It is perfectly apparent that a question stated as follows: "Was the defendant (plaintiff-in-error) entitled, upon his motion therefor, to a direction by the trial court of a verdict of acquittal at the close of the State's case in chief?" is not so phrased "that the point of law intended for solution" plainly appears. The reference to the second assignment of error appended to the statement throws no light upon the question. The second, third, fourth and fifth statements in the brief constituted no clearer statement of the point of law intended for solution.

The purpose of the rule was to require the attorney for the plaintiff in error, or solicitor for appellant, to state the questions of law succinctly and clearly that the court "may be able to obtain an immediate view of the nature of the controversy" to the end that the work of the court may be facilitated, and the causes brought here for determination may be speedily ended. The rule was adopted from a sincere desire on the part of the Court to rapidly dispose of its business consistent with accuracy and economy both in time and expense.

The rule has been in force now for two years and a half and the bar should, as we believe it will, strive to aid the

Court in the laudable enterprise of endeavoring to catch up with the docket. There is nothing unreasonable in the requirements of the rule. It merely necessitates a little more careful work in the preparation of briefs, as well as the preparation of causes for trial and the actual trial.

No one questions the ability of the Florida Bar, no one doubts the ability of its members to present their cases scientifically and expeditiously to the end that the controlling questions of law involved in any cause may be presented and determined with as little cost to litigants as possible, and as speedily as may be consistent with accuracy. When the rule is observed it will undoubtedly make for more speedy and satisfactory work by this Court. It is the hope of the writer of this opinion that the rule will be more completely observed.

In this case, we will, notwithstanding the failure to strictly observe the requirements of the rule, consider the matter suggested in the fifth statement of the "law intended for solution" although the Court from the statement as made is unable to "obtain an immediate view of the nature of the controversy," but it will be required to examine the evidence as carefully as under the old rule it would be compelled to do under an assignment of error that the court erred in denying a motion for a new trial based on the ground that the verdict was unsupported by the evidence.

A careful examination of the evidence submitted in the transcript of the record in this case leads us to the conclusion that in the testimony of the prosecutrix, Lucille Tucker, there appears to be an element of coercion in the transaction between her and the plaintiff in error. He, according to her testimony, definitely named the amount the woman was to pay during the summer months and the amount she would be required to pay during the winter

months. He said that it would be cheaper for her to pay that amount than for her to pay fines, and that he did not intend to let her run her business unless she did pay it. The jury evidently believed that statement, which it was their province to do. That being true, that evidence was sufficient to sustain the charge which was based on the sections denouncing the offense of bribery by extortion, unless the testimony of the woman, measured by a doctrine which this Court has applied in at least two or three cases, is inherently lacking in coherence and probability of truth so as to render it unsafe and unreliable as a basis for conviction as a matter of law.

It is contended by counsel that the testimony of Lucille Tucker, who alone testified to the payments of money to the accused and the circumstances in which the agreement was made, is not sufficiently convincing in that its contradictions and anomalies stamp it with the brand of falsehood and uncertainty so that the remaining evidence in the case was insufficient upon which to rest a conviction and that under the authority of the case of Council v. State, 111 Fla. 173, 149 South. Rep. 13, and Fuller v. State, 92 Fla. 873, 110 South. Rep. 528, the judgment should be reversed.

It is true that there are some contradictions in the testimony of the woman, and the testimony of others impeaches its credibility. It is difficult for this Court to assert that the quality of the woman's testimony was such as to render it unworthy of credibility in the main, notwithstanding the opinion of the jury, the members of which were better qualified to judge its probative value than we are from the mere typewritten report of it, and the confirming opinion of the judge of the trial court who heard the evidence and denied a new trial.

It would serve little or no valuable end to discuss the testimony of the principal witness for the State and endeavor to point out the many errors, anomalies, uncertainties, contradictions and improbabilities which it contains. It will impress one who reads and studies it with its inherent weakness, insincerity and lack of conformity to standards of consistency which always mark a truthful narrative.

The system of criminal procedure which offers an opportunity for designing persons to begin criminal investigations and prosecute criminal charges in furtherance of some scheme for revenge, and the ease with which a criminal charge may be lodged against a person notwithstanding the inherent weakness of the evidence on which the State relies for a conviction, is in no small measure responsible for the very perplexing questions which in cases like this confront this Court. On the other hand, the venality of police officers in some localities, which has been told about in newspaper stories and other methods of publication gives a pseudo tone of credibility to a charge of graft against an officer of the county or State, but a criminal prosecution should not be influenced by such considerations, which in more instances than otherwise perhaps have no foundation in truth, and it is unsafe to rest a conviction in such cases upon the incoherent, inconsistent, rambling and contradictory statement of a person, self-confessed violator of the law, who appears to be seeking a revenge which she is unable to accomplish by personal chastisement.

However, Mr. Justice WHITFIELD, Mr. Justice BROWN and Mr. Justice BUFORD are of the opinion that on the evidence the judgment should be affirmed, but Mr. Chief Justice DAVIS, Mr. Justice TERRELL and the writer are of the opinion that a new trial should have been granted on the ground that the evidence of guilt is unsatisfactory.

The members of the Court, after full consultation, being equally divided in opinion as to whether the judgment should be reversed, and there being no prospect of an immediate change in the personnel of the Court, the judgment is affirmed upon authority of State *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 Sou. Rep. 51.

Affirmed. So ordered.

Davis, C. J., and Whitfield, Ellis, Terrell, Brown and Buford, J. J., concur.

## On Rehearing.

### Opinion Filed February 7, 1934.

Per Curiam.—Upon reargument and reconsideration of this case on rehearing, a majority of this Court have reached the conclusion that the opinion heretofore rendered herein on November 10, 1933, should be adhered to in all particulars as to the law of the case, but that the judgment of the Criminal Court of Record should be reversed and a new trial awarded on the ground that the ends of justice will be best subserved by granting a new trial on the authority of Council v. State, 111 Fla. 173, 149 Sou. Rep. 13, and Haag v. State, 111 Fla. 781, 149 Sou. Rep. 566, wherein it was held that where evidence supporting a conviction for felony bears such earmarks of falsehood and uncertainty as to amount to a legal insufficiency of the evidence to support the verdict, a new trial will be awarded by the appellate court in order that another jury may have an opportunity to pass on the evidence. Armstrong v. State, 30 Fla. 170, 11 Sou. Rep. 618, 17 L. R. A. 484.

Reversed on rehearing and remanded for a new trial.

Davis, C. J., and Ellis, Terrell and Buford, J. J., concur.

Whitfield and Brown, J. J., concur in the reversal.